```
 1                   IN THE UNITED STATES DISTRICT COURT

 2                FOR THE WESTERN DISTRICT OF MICHIGAN

 3                          SOUTHERN DIVISION

 4      UNITED STATES OF AMERICA,

 5            Plaintiff,                 No.  1:20cr189

 6         vs.

 7      MYKAEL LEE BOOKER,

 8            Defendant.

 9

10      Before:

11                      THE HONORABLE ROBERT J. JONKER,
                            U.S. District Judge
                            Grand Rapids, Michigan
12                      Thursday, September 23, 2021
                        Motion to Withdraw Plea Proceedings
13
        APPEARANCES:
14
                        MR. ANDREW BIRGE, U.S. ATTORNEY
15                      By:  MR. JONATHAN C. ROTH
                        The Law Building
16                      330 Ionia Avenue, NW
                        Grand Rapids, MI 49501-0208
17                      (616) 456-2408

18                              On behalf of the Plaintiff;

19                      FEDERAL PUBLIC DEFENDERS
                        By:  MS. HELEN C. NIEUWENHUIS
20                      50 Louis Street NW, Suite 300
                        Grand Rapids, Mi 49503-2633
21                      (616) 742-7420

22                              On behalf of the Defendant.

23      REPORTED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR

24

25
```

1        09/23/2021

2        (Proceedings, 10:00 a.m.)

3        THE CLERK:  The United States District Court for the

4   Western District of Michigan is now in session.  The Honorable

5   Robert J. Jonker, chief judge, presiding.

6        Court is in session.

7        THE COURT:  All right.  We're here on the case of the

8   United States against Mykael Booker, 1:20cr189.  Let's start

9   with appearances, please.

10        MR. ROTH:  Good morning, Your Honor.  Jonathan Roth on

11   behalf of the United States.

12        THE COURT:  Good morning.

13        MS. NIEUWENHUIS:  And Helen Nieuwenhuis on behalf of

14   Mykael Booker, Your Honor, and he is here and present today.

15        THE COURT:  Okay.  Welcome everyone.  The matter on

16   the agenda for today is the Defense motion to withdraw

17   Mr. Booker's guilty pleas at least to Counts 1, 2 and 4.  I

18   think not to Count 3, is that right, Ms. Nieuwenhuis?  Count 3

19   being the firearm or the -- the ammunition rather?

20        MS. NIEUWENHUIS:  I was going to say, that is correct.

21   Mr. Booker and I have spent many hours discussing this, and I

22   really asked to have this motion so Mr. Booker could indicate

23   what he wanted to do, because we have kind of gone back and

24   forth as to which counts.  I don't know.  We may be moving to

25   withdraw his entire plea, Your Honor.

1        THE COURT:  All right.  Well, maybe, are, I mean, I

2    have to know what the requested relief is so -- I mean, the

3    motion papers as I saw it framed addressed certainly 1, 2 and

4    4.  I thought there was an explicit statement that he wasn't

5    moving to withdraw as to Count 3.

6        MS. NIEUWENHUIS:  And that was, Your Honor, and I am

7    all right proceeding on that, Your Honor.  And I tried to leave

8    some openings at the time that Mr. Booker and I talked that was

9    our determination of where we were, and -- is that where we

10   still are?  Mr. Booker is indicating that's where we still are,

11   Your Honor.

12       THE COURT:  All right.  Very good.  And I take it from

13   the government's perspective, Mr. Roth, there is no opposition

14   to withdrawing the plea on Count 2, right?

15       MR. ROTH:  That's correct, Your Honor.

16       THE COURT:  And if we grant it on that, which I am

17   inclined to do because there is no opposition and there is no

18   factual basis, I take it the government would move to dismiss

19   that at some point?

20       MR. ROTH:  That would be the plan, Your Honor.

21       THE COURT:  Okay.  I have to say, you know, this is

22   not the first time somebody has tried to withdraw a plea but I

23   have never seen one based on what happened here, which is a lab

24   test showing absolutely no controlled substance after both a

25   dog alert and a field test to the contrary.  That's very

1    unusual.  But let me hear your position, then, each of you on

2    the other counts.  I'll give you my initial reaction so you can

3    focus your comments.

4         MS. NIEUWENHUIS:  All right.

5         THE COURT:  The Count 2, granted.  There is clearly no

6    factual basis and that plea has to be set aside, and I expect,

7    as Mr. Roth said, the government will move to dismiss that in

8    due course.

9         With respect to the felon in possession of ammunition,

10   Count 3, as Ms. Nieuwenhuis indicates, the Defense isn't moving

11   to withdraw that, and I would have to say I think the

12   circumstances would make it difficult to support withdrawal

13   under the standard either Durham or Ellis factors or whatever

14   case you want to cite, because it's really not tied to anything

15   involving what people believed was cocaine at the time

16   mistakenly.  It's independent.  It's based on physical recovery

17   of ammunition in the place where Mr. Booker was arrested.  And

18   I don't see any of the other circumstances that would point to

19   a good basis to set that aside in any event.  That would be my

20   reaction.

21        Count 1, the conspiracy I tend to think falls in a

22   similar bailiwick, that the time frame of the conspiracy was a

23   little longer.  It was certainly not focused just on the

24   November 22 discovery of what people at the time thought was a

25   significant quantity of cocaine, and there was also I think a

1    pretty strong factual basis that Mr. Booker provided to the
2    Magistrate Judge during the plea hearing for that, but I am
3    willing to listen.  And I understand the Defense position that,
4    well, the presence of a large amount of cocaine at the time of
5    the arrest would certainly also be strong evidence of a
6    conspiracy and might therefore have affected Mr. Booker's
7    thinking and the decision he made to plead on that.
8          924(c), Count 4, that's the one where I am the most
9    sympathetic on initial hearing anyway and initial reading to
10   the Defense position that Mr. Booker ought to be able to set it
11   aside.  And it's not only based on what's in the Defense paper.
12   When I went back and looked at the change of plea hearing
13   transcript, and I've had a chance, of course, to listen to the
14   tape before in reviewing the report and recommendation, but
15   what I see is at least in two places when Judge Kent is talking
16   to Mr. Booker, a reference not to in furtherance but to in
17   connection with.
18         So I am looking at, for your benefit, counsel, I think
19   it's page 8 of the transcript where he describes that as one of
20   the elements, and then later on when going through the factual
21   basis on page 18, again, he says, lastly, is it also true -- he
22   is asking Mr. Booker -- on that date -- on that date, November
23   22nd, 2020, that you possessed a pistol in connection with the
24   drug dealing which is charged against you in Counts 1 and 2 of
25   the indictment?  And Mr. Booker says, yes, sir.

1           But that's the only thing he directly admitted, and I

2    don't think under prevailing case law that in connection with

3    is the same thing as in furtherance of.  Although, the

4    government certainly detailed proofs elsewhere in the record

5    from which you could draw that reasonable inference on the

6    present record I might be inclined to think that there ought to

7    be another chance for Mr. Booker to assess where he wants to go

8    on that.

9           So that's, you know, after just reading the briefing

10    of the parties, after looking, again, at the plea hearing

11    transcript this time, not just the tape, those are my

12    preliminary coming in leanings, and with that I'll turn it over

13    to Ms. Nieuwenhuis for any argument the Defense wants to make.

14    And as I said, I am not going to make any final decisions until

15    I hear both of you today, but I figured I'd give you a target

16    to shoot at.

17           MS. NIEUWENHUIS:  Okay.  May I have just one moment,

18    Your Honor?

19           THE COURT:  Sure.

20           MS. NIEUWENHUIS:  I do want to say a few words on the

21    record --

22           THE COURT:  All right.

23           MS. NIEUWENHUIS:  -- in regards to, I think, the Court

24    has already put its finger on the pulse of what an odd scenario

25    this is that all of these drugs tested negative or there were

1    no controlled substances in over 3,000 grams that were tested.

2    I personally have never had that happen before, but I think at

3    least in my -- you know, there are sometimes when it's probably

4    best for a client maybe not to have purity levels or whatever

5    tested, but I think from now on, at least trying to counsel

6    Defendants, I think I am going to insist upon having these

7    drugs tested before they come in and enter a plea.  And I know

8    that, you know, time frames are very difficult for that to all

9    happen, but we wouldn't be in this position.

10            And I do have to say that Mr. Booker has -- is really

11   a very intelligent young man.  He is very thoughtful.  He has

12   put in a lot of work even on his decisions.  There are some

13   reasons in our decision that I really don't want to put on the

14   record in open court, but I think part of the complexion of

15   this case had to do with early on the government wanting him to

16   cooperate, of which he did not want to cooperate, and with that

17   said, the only place I found where these drugs allegedly tested

18   positive is listed in that complaint, and I guess --

19            THE COURT:  The November 22 drugs?

20            MS. NIEUWENHUIS:  Yes.

21            THE COURT:  Was there a test done, by the way -- I

22   seem to recall, whether it was in the complaint or otherwise,

23   that some heroin was found on Mr. Booker.

24            MS. NIEUWENHUIS:  Yes.  There was some heroin found on

25   Mr. Booker, but I have not seen a test result on that.

1    THE COURT:  Okay.

2    MS. NIEUWENHUIS:  There was some crack cocaine that I

3    did believe tested positive at that residence.

4    THE COURT:  Okay.

5    MS. NIEUWENHUIS:  And so perhaps, you know, early on

6    we would have challenged the complaint and had more of a record

7    even of the basis of this testing.  And you know, I guess it's

8    live and learn, but from now on, as I said, I think I am going

9    to change at least that part of how I proceed in a case.

10    As the Court knows, Mr. Booker was charged in Count 1,

11    Count 2, 3 and 4, and Count 4 has always been rather

12    problematical.  And after discussing everything and -- I can't

13    emphasize it enough how many times we talked about the 924(c)

14    in conjunction with the problems that we have on the date of

15    November 22 of 2020, and the alleged three kilograms of cocaine

16    that was found in that residence.  I don't think there is any

17    way that anybody looking at the factual and the circumstances

18    of this case can say that Mr. Booker's entry of a 924(c) guilty

19    plea shows that he knowingly and voluntarily entered that plea.

20    We had looked at the 924(c) very closely after the

21    Court had questioned it the first time the way it was charged,

22    and when you look at the indictment, in the indictment it

23    actually says, on/or about November 22 of 2020, and then later

24    on references Count 1 and Count 2 of the superseding

25    indictment.  And early on there was a plea agreement offered

1    which would be dismissing the conspiracy count, and Mr. Booker

2    would be entering pleas to Count 2, 3 and 4.  And after

3    discussing that with Mr. Booker, and we kind of came, I think,

4    to the conclusion that the conspiracy was probably the least of

5    our problems when we were looking at what kind of time he was

6    looking at.

7         But had we taken -- had we known maybe about this

8    whole thing with the drugs, it might have changed the

9    complexion and he might have entered a plea agreement, and that

10   was a plea agreement without cooperation.  However, as

11   Mr. Booker indicated to me, he didn't want anybody being able

12   to say that he was cooperating or that somebody could point to

13   something and make it look as if he was cooperating, and so we

14   passed that up.  But had that gone and we had entered a plea in

15   front of the Magistrate, there would be nothing to attach this

16   924(c) to because Count 2 would be gone and he would not have

17   been adjudicated guilty of the conspiracy.

18        And the time frame of when the drugs were tested, they

19   were not tested until after the Court had accepted the report

20   and recommendation in the case, and so that's a very -- a much

21   lower standard to try and withdraw your plea at that point had

22   we known that and immediately gone in at that time.

23        But here I have to show that he entered a plea which

24   was not knowing and voluntary, and if Mr. Booker shows a fair

25   and just reason for requesting withdrawal of his plea, he

1    should be allowed to withdraw that, and we are asking the Court

2    to allow him to withdraw his plea on Count 4, which is the

3    924(c).

4              I guess I can't emphasize enough to the Court that the

5    drugs found at the house basically colored our decisions as to

6    what we wanted to do and most definitely with the 924(c).

7    Attorney Celis was involved when we talked to Mr. Booker about

8    it, and we came to the conclusions really that because of what

9    had happened on November 22 of 2020, even if we proceeded to

10   trial and fought the other issues, the alleged payment or

11   whatever in October, whether or not the government would be

12   able to show that and that would be a trial issue.

13             So I am asking the Court to allow Mr. Booker to

14   withdraw his guilty plea in regards to the comments that the

15   Court has already made in regards to what was said at the plea

16   hearing.  And the plea hearing is more of a colloquy with the

17   Magistrate Judge and the government saying, you know, do you

18   agree?  And Mr. Booker says yes.  And so I'm asking the Court

19   to take a hard look at it in allowing Mr. Booker to withdraw

20   his plea to Count 4.

21             THE COURT:  All right.  Thank you, Ms. Nieuwenhuis.

22             MS. NIEUWENHUIS:  You are welcome.

23             THE COURT:  We'll go over to Mr. Roth for the

24   government's position.

25             MR. ROTH:  Thank you, Your Honor.  And I will start by

1    addressing the Court's questions first.

2           THE COURT:  All right.

3           MR. ROTH:  As it relates to the heroin that was found

4    in the Defendant's buttocks that was not tested.  Because it

5    was such a small amount, it was more consistent with use

6    because the heroin was not part of the charged distribution

7    conspiracy, we did not send that into the lab.

8           THE COURT:  All right.

9           MR. ROTH:  The Court's other and far more important

10   question is about the factual basis that was given to

11   Magistrate Judge Kent.  This was not something that was raised

12   by Defense counsel and therefore not something that we briefed,

13   and so I am not in a position to be able to speak appropriately

14   about what the remedy is for an inadequate factual basis.  But

15   what I can speak to is the factual component of it, which is

16   that while the Magistrate's use of the word in connection to in

17   furtherance of is certainly not the same thing, it is certainly

18   problematic, and if that were the sole basis for the factual

19   basis it would be a much larger problem.

20           But immediately preceding that, the Magistrate's

21   practice and what was done in this case is to ask the

22   government to give a summary of the proofs that would be

23   presented, and in that summary we talked about a number of guns

24   that the Defendant possessed in furtherance of -- in

25   furtherance of this conspiracy both on the 22nd and leading up

1    to it, and the Defendant adopted that in saying that the

2    government would be able to present that evidence,

3    acknowledging that it was accurate.

4         And so while not as detailed as this Court's factual

5    basis would have been, it certainly does seem to suffice in

6    establishing a factual basis, but more importantly that the

7    Defendant was acknowledging these things to be true.

8         And I think that gets into the larger issue, which is

9    that the Defendant does not -- he does not assert his innocence

10   as to these counts, and that's maybe the most important factor

11   that that is in the Court's consideration with motions to

12   withdraw pleas.  What he says is that his decision to plead

13   guilty hinged heavily on the drugs seized from his apartment.

14   In other words, I thought that you could prove that I was

15   guilty but now I am not so sure.  That's a strategic decision.

16   That is not a knowing and voluntary decision -- excuse me, or

17   an unknowing or unvoluntary decision.  It does not speak to

18   those issues.  It speaks to his own personal strategy and that

19   weighing of whether or not I could win at trial.  That

20   reconsideration of that is something that is, a -- not an

21   approved reason to withdraw a plea, but to the contrary, that

22   sort of buyer's remorse is expressly disfavored in motions to

23   withdraw a plea.

24        Nothing that the Defendant argues undermines that this

25   was a knowing and voluntary plea.  He knew that the testing was

1    not complete at the time he chose to plead guilty, and this is

2    sort of what the Court acknowledged.  He chose to plead guilty

3    because he believed he had three plus kilograms of cocaine.  He

4    knew he had phone calls of which he is clearly discussing more

5    than 500 grams.  He knew that the evidence was overwhelming as

6    to the conspiracy.

7         The only thing that then changes is that the cocaine

8    found in the room is not -- excuse me.  Some of the cocaine

9    found in that room was not found to be actual cocaine.  That

10   does not change whether or not he possessed a gun on that day

11   in furtherance of the overall conspiracy.  He acknowledges

12   possessing that gun.  He acknowledges expressly possessing it

13   in connection to, and then he adopts the government's

14   recitation of how he possessed it in furtherance of that

15   conspiracy.  And again, there is nothing that Ms. Nieuwenhuis

16   today says that factually undermines that nor is there anything

17   that legally supports a connection that would undermine it.

18        Ms. Nieuwenhuis discussed today a potential plea

19   agreement earlier on that the Defendant rejected.  Discussed

20   the fact that he was offered to cooperate.  Those things are

21   not of much value or of much importance in this decision, but

22   what they do is they suggest that he did weigh his options

23   thoroughly.  That this was not something he rushed into.  That

24   this was something he spoke to his counsel about, something

25   that he thought deeply about, that he had no impediments in his

1    mind to making a well-reasoned decision.  To the contrary, he

2    evaluated his circumstances and strategically made the one that

3    he thought benefitted him best, and that was not to plead

4    guilty pursuant to an agreement but to come in and plead to all

5    of the charges.  And in some ways that significantly simplifies

6    the analysis today.

7            If this were a plea agreement where he had pled guilty

8    to 2, 3 and 4 and in exchange 1 had been dismissed, well, now

9    consideration has changed.  Now he made a bargain and the

10    weight on each side of that scale has changed.  Because he

11    walked in and pled guilty without any agreement whatsoever, no

12    consideration was removed from him.  To the contrary, his

13    weight was unloaded a bit.  His count will be dismissed, and he

14    benefits from that, but it does not undermine the bargain that

15    he made when he chose to plead guilty, nor does it undermine

16    the fact that he made that decision knowingly and voluntarily.

17            So we'd ask the Court to deny the motion as to the

18    counts other than Count 2 and 3, so Counts 1 and 4.  If the

19    Court is inclined to allow the Defendant to withdraw as to

20    Count 4, I think for simplicity it would make sense to withdraw

21    as to Count 1 as well, so that when we proceed to trial the

22    jury will have those to consider together because they are

23    obviously linked in the charging language.  Thank you.

24            THE COURT:  All right.  The related -- I mean, it's

25    not a related question but a different question, and I ask you

1    both to address this, too.  You touch on at the end, Mr. Roth,

2    if we are going to have some but not all of the pleas set aside

3    when, I guess, we didn't have a plea agreement though.  It was

4    a plea straight up, so we don't really have the negotiation

5    issues.  All right.  I don't need to hear anymore about that

6    then.  Okay.  Thank you.

7              MR. ROTH:  Thank you, Your Honor.

8              THE COURT:  Ms. Nieuwenhuis, anything else from your

9    perspective?

10             MS. NIEUWENHUIS:  I just have a few things, Your

11   Honor.

12             I don't see how it can be buyer's remorse when you

13   base your decision on evidence that the government says they

14   have and that is not true.  And so the buyer's remorse which we

15   usually see in a fact scenario is not here.  There is no buyer

16   remorse.  This is he now knows these -- the drugs were fake.

17   And we based a lot of decision based on that most definitely on

18   the 924(c) count, and I think it would be totally unfair to

19   hold him to the plea that he made in front of the Magistrate.

20             It's not a well-reasoned decision.  Mr. Booker is a

21   very intelligent individual, but you can be the most reasoned

22   decision maker in the world, but if you don't have the true

23   facts of what you are pleading to, or believe exist, then you

24   can reason all you want but your reason is faulty at that

25   point, and I am asking the Court to allow Mr. Booker to

1    withdraw his 924(c) plea.

2            When we look at the Durham case, it lists, you know,

3    the length of time between the plea and the request to

4    withdraw, the Defendant's reason for not presenting his grounds

5    earlier, whether he has maintained innocence or asserted

6    innocence.  There are some issues that I don't want to discuss

7    on the record right now in regards to things that he has said

8    in regards to maintaining his innocence, but sometimes when you

9    are looking at evidence that's staring you in the face and you

10   can do nothing other than deal with it, you enter a plea.

11           And that brings us to the other part of the analysis,

12   which are circumstances surrounding a plea and any potential

13   prejudice to the government.  I don't see that.  I know there

14   is at least one Co-Defendant which is still standing.  And so I

15   am asking the Court to take all those things into consideration

16   and allow Mr. Booker to withdraw his plea to that count, Your

17   Honor.

18           THE COURT:  All right.  Anything else from the

19   government, Mr. Roth?

20           MR. ROTH:  Very briefly.  Just -- and specifically

21   addressing something Ms. Nieuwenhuis said.  It's important to

22   note that testing did confirm that the Defendant did have a

23   distribution amount of cocaine on November 22nd, which is the

24   day of the charged 924(c).  While it's not the big amount, it

25   is certainly a distribution amount of crack cocaine.

1          Nothing else, Your Honor.  Thank you.

2          THE COURT:  All right.  Okay.  Well, the motion from

3     the Defense is relief to withdraw a plea at least to some of

4     the counts, specifically Count 924(c), the Count 4, as well as,

5     of course, Count 2 that everybody agrees needs to be withdrawn,

6     and then Count 1, the conspiracy.  There is no move on the part

7     of the Defense to withdraw the plea to the felon in possession

8     of ammunition charge.

9          When I look at the overall motion, I think everybody

10     agrees on what the standards are.  The language of the rule

11     says is there a fair and just reason for withdraw of the guilty

12     plea?  And the language of the cases, whether I use the

13     government's case cites or the Defense are the same.  We look

14     at the length of time between a decision to plead guilty and

15     then the motion to withdraw and the reason that it is being

16     presented now and not earlier.

17          And I think everybody also agrees that those first two

18     factors weigh in favor of the Defense, certainly not against

19     the Defense, because the reason that came up was lab testing of

20     what everybody thought earlier, based on preliminary testing,

21     would show controlled substances, specifically cocaine, but in

22     fact it didn't when there was lab testing.

23          So yes, you can characterize it from the government's

24     point of view as, you know, sort of lessening the weight for

25     the Defense.  You can characterize it from the Defense point of

1    view as not really knowing what was going on.  The reality is

2    we all make decisions in the face of some level of uncertainty.

3    That's true in a guilty plea situation, too.  And one of the

4    factors people put in the mix is, well, how much do we know

5    about the testing or the proof that's actually going to come in

6    at trial?  But either way, for purposes of withdrawing the

7    plea, I think we're situated with those factors weighing in

8    favor.

9         The last two factors are prejudice to the government

10   and Defendant's prior experience.  There really isn't, I don't

11   think, much prejudice to the government.  Of course, going to

12   trial is always more work than not going to trial, but nothing

13   that seems unfair to me.  And the Defendant's prior experience

14   with the criminal justice system is not of a huge factor either

15   way.

16        To me the key factors, the pivotal ones, are

17   maintaining innocence and the circumstances of the original

18   plea.  And to me those factors, as well as the others that I've

19   talked about, weigh differently depending on the count we are

20   talking about.

21        Everybody agrees Count 2 and the plea of guilty to

22   Count 2, possession with intent to distribute cocaine, has to

23   go because the factual basis for it is gone, at least in the

24   quantities that were charged, and so I am going to grant the

25   Defense motion as to Count 2.

1          The felon in possession of ammunition, Count 3, is

2     really, I think, where we started the hearing.  Not at issue,

3     but to the extent it is, and I understand from

4     Ms. Nieuwenhuis's comments that there has probably been some

5     back and forth in her own mind and her client's own mind on

6     whether to do it, to me there is no basis, no fair and just

7     reason for withdraw of that plea, even though that's the one

8     that exposes Mr. Booker to the most significant mandatory

9     penalties in the case, the 15-year mandatory minimum based on

10    prior record.  It's a standalone set of factual matters, and it

11    simply is recovery of the ammunition in the place where he was

12    arrested after having been convicted of the predicate felonies,

13    and I think that clearly, when I go through the transcript of

14    the plea colloquy with the Magistrate Judge, Mr. Booker takes

15    responsibility for that and has never maintained innocence with

16    respect to that Count 3.

17          The conspiracy charge, which is conspiracy to

18    distribute controlled substances, specifically the cocaine,

19    actually charges a much broader time period.  It goes all the

20    way back to 2018, though I don't think if we were going to

21    trial for Mr. Booker we'd find proofs of his involvement

22    necessarily that far back, but it does anticipate -- at least

23    the government's proofs anticipate trial proofs beyond what was

24    going on November 22.  There was the October run to Detroit,

25    for example, the tape-recorded conversations or intercepted

1   conversations rather that give context to what's going on and

2   make it look like payment for drug delivery.  And Mr. Booker

3   doesn't back away from any of that in the plea colloquy.  And

4   beyond that, he really doesn't back away from what I think the

5   fairest conclusion is, that he thought the three kilograms or

6   so that he had of substance in his residence on November 22, he

7   thought they were real drugs, and that, for a conspiracy

8   purpose, is still proof.  It's not necessary to be convicted of

9   a conspiracy that you actually have real drugs.  If you think

10  they are you are still making an agreement with somebody for

11  the distribution of controlled substances, and if they submit

12  counterfeit drugs to you, you have been defrauded by your

13  fellow co-conspirator but you are not necessarily innocent of

14  the conspiracy.

15        So I think that does stand alone, and frankly, I would

16  expect there would be proofs of what was found in the

17  November -- the November raid, including the fact that it

18  wasn't a controlled substance but lab tested, but put that

19  together with the other circumstances of the arrest and there'd

20  still be a basis for a jury to find the conspiracy and

21  Mr. Booker has admitted to it.  So I don't see a basis for

22  withdraw of the guilty plea to the conspiracy.

23        The 924(c) is, as I said from my opening comments, the

24  one that I think is the strongest case for a fair and just

25  reason, and I do intend to grant the Defense motion with

respect to the 924(c).  It's absolutely true that it's not --
that a motion for a withdraw of a plea is not an opportunity
for a Defendant just to kind of make a tactical decision or
second guess what happened earlier, but I don't think that's
really what's going on here.  I think the 924(c) has, at least
in my mind, always been a bit of an issue.  That's why I raised
it originally with the parties in a different context and then
my own schedule didn't permit me to take the plea so I had
Judge Kent do that.

But when I -- when I go back over that plea hearing,
and when I think about what has happened in the case since
then, I think there is a fair and just reason to set aside
Mr. Booker's guilty plea and give him a chance to take that to
trial and give the government a chance to prove it if that's
where everything is going to go.

First of all, the language the Magistrate used is
definitely not the language of the statute.  In connection with
is not the same thing as in furtherance of, and I did find a
couple cases that emphasized that.  They were plain error
review, and so the court on appeals found there was no basis to
overturn the conviction on plain error review, but it did in
both cases highlight that the statute, 924(c), requires more
than simply in connection with.  It's got to be in furtherance
of.  One is from the Sixth Circuit, and that is an unpublished
Sixth Circuit decision, United States against Bedwell 836 F.

1    App'x 399.  And even though they say yes that it was a mistake

2    for the judge at that plea colloquy to use in connection with

3    rather than in furtherance of, they didn't find enough on the

4    record to set it aside in part because nobody called it to the

5    attention of the judge or government at the time, which of

6    course here we have called it to everybody's attention.

7         And then the other case is from the First Circuit,

8    United States against Delgado-Hernandez, 420 F.3d 16, a 2005

9    decision.  It goes into a lot more detail as to why in

10   connection with is not the same thing as in furtherance of, but

11   also in that case why there wasn't a basis for plain error

12   vacatur.

13        But here both times the Magistrate talks with

14   Mr. Booker about those elements, as I indicated earlier, he

15   uses the phrase in connection with.  And when he specifically

16   asks Mr. Booker for his view of what was true on the factual

17   basis, he focuses, first of all, only on November 22, 2020, not

18   the earlier October delivery.  And he says, did you possess

19   that pistol in connection with the drug dealing charged in both

20   of those earlier counts?  And Mr. Booker says yes.  But that

21   means he hasn't really come forward and admitted even in the

22   plea colloquy everything that the government expects to put in

23   evidence.

24        And even the government's proffer during the plea

25   colloquy was somewhat limited on the firearm itself.  When I

1    look at page 11 and 12 for example, you know, there is a focus

2    certainly on the language of the intercepted call about taking

3    the cheese to the guy in Detroit, and there is video found

4    which had a large amount of cash as well as a pistol in his

5    possession.  That's going to be part of the government's proofs

6    presumably, but that's not something that the Magistrate

7    specifically asked Mr. Booker to affirm.  He simply asked him,

8    do you agree the government would be able to produce that

9    evidence?  And the Defendant said yes.  And that, to me, is

10   different.

11        Beyond that there isn't a lot in the description of

12   what happened or what the nature and circumstances of the

13   Defendant's possession of the firearm was.  And in fact, as I

14   recall, there is no discussion of actual recovery of the

15   firearm on November 22.  So it's at least possible that the

16   firearm -- maybe not probable, but it's at least possible that

17   the firearm was possessed somewhere off site constructively.

18   Who knows.

19        It's clear that one thing we won't be able to show the

20   jury in proofs is that on November 22, whatever possession

21   Mr. Booker had, if any, of a firearm was in connection with

22   three kilograms of cocaine because there weren't any -- or

23   there wasn't three kilograms of cocaine.  It was the smaller

24   quantity of crack cocaine.  But one of the factors the jury is

25   going to be asked to consider in weighing in furtherance of, is

1      the circumstances of where the firearm was recovered.  And

2      here, No. 1, it wasn't recovered, and No. 2, to the extent it

3      was in the residence in Mr. Booker's possession on November 22,

4      it was no longer with three kilograms of drugs.

5              So I think under the circumstances when we have a

6      chance to pull back the plea we are not going forward

7      convicting and sentencing and then potentially going up on

8      plain error review or otherwise, but we have a Defendant who

9      says, wait a minute, the ground has changed on me now, and we

10     have a plea colloquy that is a little thin, all things

11     considered, on a charge that has an array of proofs a little

12     unusual for that kind of a charge anyway.  I think the fair and

13     just thing to do is allow Mr. Booker to withdraw the plea.  So

14     I do intend to and will grant Mr. Booker's motion with respect

15     to not only Count 2, the possession with intent to distribute

16     cocaine, but also the 924(c) possession of a firearm in

17     furtherance of drug trafficking.

18              I am not granting the motion with respect to the

19     conspiracy in Count 1 or the felon in possession of ammunition

20     in Count 3.

21              So there is two charges left, Counts 2 and 4.  It

22     sounds like the government intends to move to dismiss Count 2

23     and proceed with Count 4, but I'll let the parties tell me

24     where we're going to go on that.  I am sure at this point we

25     don't have a trial date -- well, I don't know if we do or not

1    on the Co-Defendant.  We have a sentencing date I'm sure for

2    Mr. Booker.  I presume until we get the entire case resolved as

3    to Mr. Booker one way or the other it would be most sensible to

4    wait to sentence.  Do you think so, Mr. Roth?

5              MR. ROTH:  I agree, Your Honor.

6              THE COURT:  And Ms. Nieuwenhuis?

7              MS. NIEUWENHUIS:  I agree, as well.

8              THE COURT:  Okay.  So I'll ask Ms. Bourque to remove

9    the sentencing hearing.  Do either of you know, and it's

10   probably going to be Mr. Roth most likely, where are we on the

11   trial date for the Co-Defendant?

12             MR. ROTH:  We don't yet have one, Your Honor.

13             THE COURT:  We don't.  Is that Mr. Cartwright?

14             MR. ROTH:  It is, Your Honor.

15             THE COURT:  I see.  Mr. Green's client?

16             MR. ROTH:  Yes, Your Honor.

17             THE COURT:  Okay.  Well, this doesn't involve

18   Ms. Nieuwenhuis directly, but can I just ask you for a quick

19   update on Cartwright?  I think we have a hearing next week

20   provisionally.  Do you expect we'll need it?

21             MR. ROTH:  I do not.  Mr. Green is coming to the

22   office to pick up the requested material tomorrow.  We believe

23   it's going very well.

24             THE COURT:  Either way hopefully then we'll be able to

25   put a trial date on that would apply to both -- both of the

1    remaining Defendants.

2         MR. ROTH:  Yes, Your Honor.

3         THE COURT:  Okay.  All right.  Is there anything else

4    that we can or should do today from either side's perspective?

5         MS. NIEUWENHUIS:  I don't believe so, Your Honor.

6         MR. ROTH:  I do want to clarify.

7         THE COURT:  Yes.

8         MR. ROTH:  And I need to look at the procedure of

9    this.  While we certainly will be dismissing the 500-plus grams

10   for Count 2, I think at the end of the day the intent would be

11   to go to trial on a similar count without specifying a minimum

12   amount.  So there would still be a possession with intent to

13   distribute.  It would not have the 500 grams associated.

14        THE COURT:  And presumably you'd have to reindict on

15   that?

16        MR. ROTH:  Yes, Your Honor.

17        THE COURT:  I see.  Okay.  Well, what I'll do is enter

18   the order today making it clear that the guilty pleas on Counts

19   2 and 4 are withdrawn but not on Counts 1 and 3, and then if

20   you go forward with a new indictment or if there is another

21   resolution the parties can let me know.  Otherwise, we'll just

22   move forward with the scheduling.

23        MR. ROTH:  Thank you, Your Honor.

24        MS. NIEUWENHUIS:  Thank you, Your Honor.

25        THE COURT:  Okay.  Very good.  Thank you.

1          THE CLERK:  All rise, please.  Court is adjourned.

2          (Proceeding concluded, 10:43 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        REPORTER'S CERTIFICATE

 2

 3            I, Paul G. Brandell, Official Court Reporter for the

 4    United States District Court for the Western District of

 5    Michigan, appointed pursuant to the provisions of Title 28,

 6    United States Code, Section 753, do hereby certify that the

 7    foregoing is a full, true and correct transcript of the

 8    proceedings had in the within entitled and numbered cause on

 9    the date hereinbefore set forth; and I do further certify that

10    the foregoing transcript has been prepared by me or under my

11    direction.

12

13

14                        /s/ Paul G. Brandell

15                        Paul G. Brandell, CSR-4552, RPR, CRR

16                        U.S. District Court Reporter

17                        399 Federal Building

18                        Grand Rapids, Michigan  49503

19

20

21

22

23

24

25
```